# In the United States Court of Federal Claims

No. 13-821C

(Filed: 2 August 2021[*])

*******************************************

| | |
|---|---|
| INGHAM REGIONAL MEDICAL CENTER, *et al.*, | * |
| | * |
| Plaintiffs, | * |
| | * |
| v. | * |
| | * |
| THE UNITED STATES, | * |
| | * |
| Defendant. | * |
| | * |

*******************************************

Motion for Reconsideration; Rule 59(a); Newly Discovered Evidence; Manifest Injustice; Privilege; Attorney Affidavit.

*Alexander J. Pires*, Pires Cooley, Washington, D.C., with whom was *Gregory A. Brodek*, of counsel, Duane Morris LLP, Bangor, ME, for plaintiffs.

*A. Bondurant Eley*, Senior Trial Counsel, with whom were *Ethan P. Davis*, Deputy Assistant Attorney General, *Steven J. Gillingham*, Assistant Director, and *Robert E. Kirshman*, Jr., Director, Commercial Litigation Branch, Civil Division, Department of Justice, Washington, D.C., for defendant.

## OPINION AND ORDER

**HOLTE, Judge**

Plaintiffs Ingham Regional Medical Center, n/k/a McLaren Greater Lansing, Bay Regional Medical Center, McLaren Northern Michigan, Gifford Medical Center, Inc., and Lakewood Health System (collectively, "plaintiffs"), allege the United States, acting through the Secretary of Defense in his official capacity as operator of the TRICARE program, underpaid plaintiffs for certain outpatient medical services plaintiffs administered through TRICARE. In June and July 2019, the parties filed various motions disputing the privilege status of multiple documents. The Court issued a sealed order on 6 January 2020, reissued for publication on 14 January 2020, ruling two documents referred to as Document One and Document Two, among certain other documents, were not subject to work product protections. On 2 June 2020, the Court, at the request of the government, issued an order confirming the documents the

---

[*] This Opinion was originally filed under seal on 21 July 2021 pursuant to the protective order entered in this case. The Court provided the parties the opportunity to review the Opinion for any proprietary, confidential, or other protected information and submit proposed redactions. On 26 July 2021, plaintiffs confirmed they do not seek redaction of the Opinion. On 28 July 2021, the government confirmed it does not seek redaction of the Opinion. The Opinion is reissued publicly identically to the Opinion filed under seal.

government must produce pursuant to the Court's 6 January order.  On 2 July 2020, the government filed a motion for reconsideration of the Court's 6 January 2020 and 2 June 2020 orders.  The Court held oral argument on the government's motion on 28 January 2021.  For the following reasons, the Court **DENIES** the government's motion.

## I. Factual History

### A. Factual History Prior to the Court's 14 January 2020 Order[1]

TRICARE is a "military health care system" established in 1956 to "provide[] medical and dental care for current and former members of the military and their dependents."  *Ingham Regional Medical Center v. United States*, 874 F.3d 1341, 1342.  The Secretary of Defense is "responsible for contracting with outside health care providers to deliver medical care to TRICARE recipients," and medical centers which provide TRICARE services "are reimbursed in accordance with guidelines set forth by the Department of Defense [("DoD")]."  *Id*. at 1343.

Hospitals in the TRICARE system[2] "complained that [the method for calculating TRICARE payments for certain outpatient services] was only intended to be used for individual health care providers, not institutions with large overhead costs."  *Id*.  In response to complaints raised by the hospitals, TRICARE "hir[ed] a consultant, Kennel and Associates, Inc., to undertake a study of the accuracy of its payments to the hospitals."  *Id*. at 1343–44.  The study concluded the DoD "underpaid hospitals for outpatient radiology but . . . correctly paid hospitals for all other outpatient services."  *Id*. at 1344 (emphasis and internal quotation marks omitted).

In response to the study, "DoD created a discretionary payment process" which "permit[ted] the hospitals to request a review of their TRICARE reimbursements."  *Id*.  The discretionary payment process included a "nine-step process by which hospitals could request review of payments for outpatient radiology services," and receipt of any payment was conditioned on the hospital signing a release "discharg[ing] the [g]overnment . . . from any and all claims, demands, actions, suits, causes of action, [or] appeals . . . on account of or arising out of or resulting from or in any way relating to payments, reimbursements, adjustments, recoupments, or any other means of compensation by [the government] made at any time for outpatient services rendered to TRICARE beneficiaries by [the hospital]."  *Id*. at 1344–45.

Certain hospitals "contested TRICARE's calculations" during the discretionary payment process.  *Id*. at 1345.  TRICARE "acknowledged that there were errors in the calculations that it had not been aware of, and agreed to pay the represented hospitals 77% more than the originally

---

[1] On 14 January 2020, the Court reissued for publication its sealed 6 January 2020 order ruling in part Document One and Document Two were not covered under the work product doctrine.  *See* Opinion and Order, ECF No. 125.  A full recitation of the factual history in this case through 6 January 2020 can be found in the 14 January 2020 order.  The factual history in this Opinion and Order contains only those facts pertinent to the government's motion for reconsideration of the Court's 6 January 2020 Opinion and Order and 2 June 2020 Order.  *See* Def.'s Mot. for Reconsideration of This Court's Orders of January 6, 2020 and June 2, 2020, ECF No. 150.

[2] The group of hospitals is a separate, but similarly situated, group of hospitals as plaintiffs in this case.  Plaintiffs seek to represent a class of approximately 1,610 hospitals allegedly being underpaid under TRICARE.  *See* Opinion and Order, ECF No. 123 at 3.

offered payments for outpatient radiology." *Id*.  TRICARE "did not recalculate the payments for any of the hospitals that did not contest their discretionary payment offer." *Id*.

Plaintiffs are a group of hospitals which provide medical services as part of the TRICARE program and "alleg[e] that DoD had miscalculated the payments for outpatient radiology during the discretionary payment process and that they had been underpaid for all outpatient services." *Id*. at 1346.  Plaintiffs argue "that the Kennel Study contains multiple errors and that if it had been done correctly, the study would have revealed that all outpatient services were underpaid, not only radiology." *Id*.

Plaintiffs served the government with various requests for production of documents between June and October 2018, and the government responded by producing around 380,000 pages of documents and compiling a privilege log with 2,500 entries.  *See* Opinion and Order, ECF No. 125 ("14 January 2020 Order") at 8.  During this production, the government inadvertently produced copies of two documents that were repeatedly marked as privileged in the government's privilege log.  *Id*.  The Court referred to these two documents as Document One and Document Two throughout the privilege dispute.  *Id*.  Document One, Bates number ING0262545-53, is a memo prepared by Dave Kennell of Kennell and Associates identifying data problems encountered while calculating adjustments for the payments owed to certain hospitals for TRICARE underpayments.  *Id*.  Document Two, Bates number ING0262544, is a spreadsheet of boxed rows on an x and y axis detailing calculations for listed hospital services and listed variables.  *Id*. at 9.  On 13 May 2019, plaintiffs' counsel notified government counsel the government produced potentially privileged documents.  *Id*. at 8.  On 2 June 2019, government counsel informed plaintiffs the government believed the documents were subject to the work product privilege and sought to claw the documents back.  *Id*. at 9.  On 24 June 2019, plaintiffs filed a motion for the Court's determination that Document One and Document Two are not privileged or subject to the work product doctrine.  *See* Pls.' Mot. for Determination that Certain Documents Produced in Discovery are not Privileged or Subject to the Work Product Doctrine, ECF No. 106.

In May 2011, Paul Hutter was appointed TRICARE General Counsel.  *See* Appx. to Def.'s Mot. for Recons. of this Court's Orders of Jan. 6, 2020 and June 2, 2020, ECF No. 150-1 ("Appx.") at 1.  At some point prior to June 2019, Mr. Hutter left government employment.  Appx. at 12.  Government counsel claims, following plaintiffs' 24 June 2019 filing, she "personally attempted to contact Mr. Hutter at his business phone number" by making two phone calls.  Transcript of Hearing via Teleconference on 28 January 2021, ECF No. 181 ("Tr.") at 49:5–10.  Government counsel later learned a DHA attorney had also "reached [Mr. Hutter] on his personal cell and also by email," but stated she "was not involved in those contexts."  Tr. at 50:5–8; *see also* Def.'s Reply to Pls.' Resp. to the Government's Mot. for Recons. of this Court's Orders of January 6, 2020 and June 2, 2020, and for Related Relief, ECF No. 168 ("Gov. Reply") at 4 (government counsel arguing "the [g]overnment undertook a significant amount of investigatory activity . . .  which included attempting to obtain Mr. Hutter's assistance through three separate modes of communication prior to the briefing deadline, i.e. at his place of business, on his personal cell phone, and by email").  Mr. Hutter states in his affidavit government counsel "advised [him] that she left a voicemail for [him] at Booz Allen Hamilton sometime between June 24, 2019 and July 8, 2019," but he is "unaware of having received such

a voicemail from Ms. Eley" because he "was almost exclusively at the site of a client" and "did not routinely check [his] voicemail" at the time.  *See* Appx. at 12.

On 2 July 2019, government counsel sent an email titled "Ingham Litigation -- Need assistance identifying the author of these documents" to Graham Ininns, a DHA employee,[3] and copied on the email Robert Seaman, Associate General Counsel of DHA.  *Id*. at 382.  Robert Seaman forwarded the email on to Deputy General Counsel of DHA Bryan Wheeler on 3 July 2019.  *Id*. at 381–82.  Mr. Wheeler in turn forwarded the request for "assistance identifying the author of the[] documents" to Mr. Hutter via email.  *Id*.  Less than an hour after Mr. Wheeler sent the email, Mr. Hutter responded via email that he "looked and [has] nothing available from the relevant time period" related to the request for assistance on this case.  *Id*. at 381.  Mr. Hutter suggested to Mr. Wheeler several people who may have insight into the question of the author of the documents and expressed his "hope this helps a little."  *Id*.  Mr. Hutter admitted in his affidavit he and Mr. Wheeler "have had several conversations about the *Ingham* litigation—principally about appearing for a deposition."  *Id*. at 13.

## B. Factual History Following the Court's 14 January 2020 Order

The Court issued an opinion under seal on 6 January 2020, reissued for publication on 14 January 2020,[4] ruling in part Document One and Document Two are not privileged.  *See* Opinion and Order, ECF No. 125 ("14 January 2020 Order") at 23.  The Court noted "Document One and Document Two's calculations relate to the government's business during the discretionary payment process and were part of a business decision prepared to provide extrapolated calculations regardless of litigation threat," and, therefore, "both documents are not subject to work product protection."  *Id*.  The Court set a deadline for the parties to submit a proposed schedule for further discovery and any outstanding motions.  *Id*. at 27.  The parties jointly proposed additional fact discovery to occur through 31 July 2020 and agreed both Document One and Document Two could be filed publicly.  *See* Order, ECF No. 129 at 1–2.

On 14 May 2020, government counsel sent a letter by FedEx to Mr. Hutter's home address "requesting [Mr. Hutter's] voluntary assistance in ascertaining the provenance and use of" Document One and Document Two.  *See* Appx. at 143–44.  The letter detailed to Mr. Hutter both the current litigation and the Court's ruling on the privilege statuses of Document One and Document Two.  *Id*. at 143–144.  Government counsel concluded the letter by "requesting [Mr. Hutter's] voluntary assistance in ascertaining the provenance and use of these documents," emphasizing "[t]ime . . . is of the essence," and stating counsel must decide "whether . . . to seek authorization within the Department of Justice to issue a subpoena and corresponding notice to plaintiffs for [Mr. Hutter's] deposition."  *Id*. at 144.  Government counsel also called Mr. Hutter on 14 May 2020 for the same purpose.  *See* Notice of Production of Call Log Records Pursuant to This Court's Oral Order of January 28, 2021, ECF No. 184 ("Gov. Supp. Production") at 4.[5]

---

[3]  The email was also sent to Mark Donahue, another DHA attorney.  *Id*. at 382.

[4]  No facts affecting the Court's 6 January 2020 order or the government's motion for reconsideration occurred between 6 January 2020 and 14 January 2020.  The Court therefore relies on the public 14 January 2020 Order in this Order.

[5]  At oral argument on the government's motion for reconsideration, the Court inquired whether the record included the full sum of communications between government counsel and Mr. Hutter since January 2020.  *See* Tr. at 78:12–14.  In response to the Court's question, government counsel expressed she "had phone calls with [Mr. Hutter]" and

On 18 May 2020, Mr. Hutter responded to the government's communications by leaving two separate voicemails with government counsel, one on her desk phone and one on her personal phone. Gov. Supp. Production at 4. Government counsel and Mr. Hutter spoke later the same day. *Id*. On 19 May 2020, Mr. Hutter emailed a former DHA colleague, DHA Deputy General Counsel Jennifer Hesch, who "was aware that the *Ingham* matter was an active litigation," to "arrange a conference call with DHA personnel who were more involved with the *Ingham* matter."[6] *Id*. Mr. Hutter had a call with Ms. Hesch on 21 May 2021 and a conference call on 22 May 2020 with DHA General Counsel, DHA Deputy General Counsel, and DHA Associate General Counsel,[7] after which agency counsel emailed Mr. Hutter this Court's order and documents related to the case. *Id*. at 4–5, 67. Government counsel separately spoke with Mr. Hutter again on 22 May 2020. *Id*. at 5.

On 2 June 2020, government counsel emailed Mr. Hutter a list of questions on Document One and Document Two, including questions asking whether direct quotes from the Court's 14 January 2020 order were accurate. Appx. at 268–272. On 9 June 2020, Mr. Hutter sent an email to the government including his "best shot" at answering the government's questions. *Id*. at 359. Government counsel transcribed the questions and answers into an affidavit on 13 June 2020, and Mr. Hutter executed the affidavit on 19 June 2020. *Id*. at 370, 1–13.

Between 3 June and 8 June 2020, Mr. Hutter also had separate communications with DHA Deputy General Counsels Jennifer Hesch and Bryan Wheeler. On 3 June 2020, Mr. Hutter sent an email to Ms. Hesch in his capacity "as an independent consultant for Booz Allen" requesting a "relaxation of the communication ban" imposed by a contracting officer related to a request for information on a TRICARE quality monitoring contract. Gov. Supp. Production at 73–74. In the same email to DHA Deputy General Counsel Ms. Hesch, Mr. Hutter noted he "received a detailed set of questions from [government counsel] on the *Ingham* case" and promised he would "respond by the end of the week." *Id*. at 74. On 9 June 2020, Mr. Hutter emailed Associate General Counsel for the DHA, Mr. Wheeler, to request a telephone call

---

offered to "make inquires and get the dates and durations of those pulled." *Id*. at 78:22–79:1. The Court thereafter instructed the government to "provide . . . a summary of the instances of communication between government counsel and Mr. Hutter." *Id*. at 80:15–81:5. On 18 February 2021, the government filed under seal "call logs and other documentation concerning [g]overnment attorneys' communications with Paul Hutter between January and June 2020." Gov. Supp. Production at 1. In the filing, government counsel state they "believed [when the government filed its motion for reconsideration] that [they] had collected and included the universe of written communications with Mr. Hutter" but "learned for the first time in compiling documents to respond to the Court's order that . . . separate from his contacts with the Department of Justice, Mr. Hutter reached out to, and communicated with, two DHA attorneys other than assigned agency counsel by telephone and by email, and that assigned agency counsel had one brief additional email exchange with Mr. Hutter beyond what the agency produced . . . in connection with the motion for reconsideration." *Id*. at 2. These communications were first provided to the Court in the government's supplemental production.

[6] Mr. Hutter's email on 19 May 2020 requested a phone call "to discuss" with Ms. Hesch Department of Justice counsel's request "that [Mr. Hutter] comment on some discovery" in an effort "to get the court to overcome the previous ruling." Gov. Supp. Production at 64. Less than 20 minutes later, Ms. Hesch sent an email informing Mr. Hutter DHA would set up a phone call between Mr. Hutter, DHA General Counsel, Ms. Hesch, and lead DHA attorney. *Id*.

[7] Mr. Hutter also previously sent an unprompted email to DHA Associate General Counsel Bryan Wheeler on 5 April 2020 unrelated to the *Ingham* litigation. *See* Gov. Supp. Production at 63. The email, and subsequent response, included discussion of sports and family news.

"about the *Ingham* litigation" because he did not recall whether Mr. Wheeler "show[ed] [Mr. Hutter] the documents with the privilege issue during the summer of 2019." *Id*. at 63. Mr. Wheeler states in an affidavit he had two phone calls with Mr. Hutter on 9 June 2020 and characterizes those calls as "touch[ing] on the *Ingham* matter" but also including "personal, family[,] and career matters." *Id*. at 28.

In his 13 June 2020 affidavit, Mr. Hutter states "the agency perceived that there was a threat of litigation by Duane Morris" at the time the firm approached DHA with complaints about the TRICARE adjustments, and he "personally concluded that there was a threat of litigation by Duane Morris . . . ." *Id*. at 2. Mr. Hutter further describes his knowledge of the history of Document One and Document Two and directly refutes language he quotes from the Court's 14 January 2020 order. *Id*. at 5–12. On his communications with government attorneys, Mr. Hutter states he is "unaware of having received . . . a voicemail" from Department of Justice counsel in 2019 but "briefly discuss[ed] the privilege challenges" in the present case "with DHA counsel Bryan Wheeler" in the summer of 2019.[8] *Id*. at 12–13.

## II. Procedural Background

On 21 October 2013, plaintiffs filed a complaint alleging the government underpaid them for medical services they provided under the TRICARE program between 1 August 2003 and 31 December 2009. *See* Compl., ECF No. 1. Plaintiffs further seek to represent a class of approximately 1,600 similarly situated hospitals across the United States they allege were underpaid by the government for similar medical services. *See* Pls.' Renewed Mot. to Cert. Class Action and Appoint Class Counsel, ECF No. 146 at 1.

On 3 February 2014, the government filed a motion to dismiss plaintiffs' complaint pursuant to Rule 12(b)(6) of the Rules of the United States Court of Federal Claims ("RCFC"). *See* Def.'s Mot. to Dismiss, ECF No. 9. Plaintiff filed a motion for leave to file an amended complaint on 25 September 2014, which the court granted on 14 November 2014. *See* Pls.' Mot. for Leave to File First Amended Compl., ECF No. 32; Order, ECF No. 39. On 13 January 2015, the government filed a motion to dismiss plaintiffs' first amended complaint. *See* Def.'s Mot. to Dismiss Pls.' First Amended Compl., ECF No. 41. On 22 March 2016, the court dismissed plaintiffs' complaint for failure to state a claim. *See Ingham Regional Medical Center v. United States*, 126 Fed. Cl. 1, 55 (2016). On appeal, the Federal Circuit "reverse[d] the dismissal of Ingham's breach of contract claim, affirm[ed] the dismissal of [Ingham's] money-mandating claim," and remanded for further proceedings on the breach of contract claim. *Ingham Regional Medical v. United States*, 874 F.3d 1341, 1348 (Fed. Cir. 2017). Plaintiffs filed a second amended complaint and a motion to certify class and appoint class counsel on 27 April 2018. *See* Second Amended Compl., ECF No. 74; Mot. to Certify Class Action and Appoint Class Counsel, ECF No. 76. The court stayed consideration of the motion for class certification on 30 April 2018. *See* Order, ECF No. 78.

---

[8] Mr. Hutter acknowledges in his affidavit having "several conversations" with DHA counsel Mr. Wheeler "about the *Ingham* litigation." Appx. at 13.

On 24 June 2019, plaintiffs filed a motion requesting the Court's determination Document One and Document Two are not privileged. *See* Pls.' Mot. for Determination that Certain Documents Produced in Discovery are not Privileged or Subject to the Work Product Doctrine, ECF No. 106. This case was reassigned to the undersigned Judge on 29 July 2019. Order, ECF No. 115. The Court held oral argument on all pending discovery motions on 7 October 2019. *See* Order, ECF No. 122. The Court issued a sealed order on 6 January 2020 granting plaintiffs' 24 June 2019 motion and reissued the same order for publication on 14 January 2020. *See* Opinion and Order, ECF No. 125.

On 16 March 2020, the government filed a motion "request[ing] clarification of this Court's Order of January 6, 2020 . . . and of its discovery obligations under that order as relates to [sic] plaintiff's recently served request for production of documents" or, "[i]n the alternative . . . the Court enter a protective order in the [g]overnment's favor obviating the need for the [g]overnment to produce documents in response to those requests." Def.'s Mot. for Clarification of this Court's Order of Jan. 6, 2020, and, in the Alternative, for a Protective Order as to Any of Plaintiff's Document Requests that Fall Outside the Scope of the Discovery that the Court has Authorized, ECF No. 130 at 1. Plaintiffs filed a response to the government's motion for clarification on 30 March 2020, and the government filed a reply in support of its motion for clarification on 6 April 2020. *See* Pls.' Resp. to Def.'s Mot. for Clarification of this Court's Order of January 6, 2020, and, in the Alternative, for a Protective Order as to Any of Plaintiffs' Document Requests that Fall Outside the Scope of the Discovery that the Court has Authorized, ECF No. 131; Def.'s Reply to Pls.' Resp. to its Mot. for Clarification of this Court's Order of January 6, 2020, and, in the Alternative, for a Protective Order as to Any of Pls.' Document Requests that Fall Outside the Scope of the Discovery that the Court has Authorized, ECF No. 136. On 2 June 2020, the Court issued an order "confirm[ing] with greater specificity . . . documents [that] shall be produced as they were found by the Court to not be subject to the work product privilege and . . . are not subject to any claim of privilege other than work product." Order, ECF No. 143 at 1.

On 5 June 2020, plaintiffs filed a renewed motion to certify the case as a class action and appoint class counsel. *See* Pls.' Renewed Mot. to Cert. Class Action and Appoint Class Counsel, ECF No. 146. The government filed its motion for reconsideration of this Court's 6 January and 2 June 2020 orders on 2 July 2020. *See* Def.'s Mot. for Recons. of this Court's Orders of Jan. 6, 2020 and June 2, 2020, ECF No. 150 ("Mot. for Recons."). Plaintiffs filed a response to the government's motion for reconsideration on 7 August 2020. *See* Pls.' Mem. of Law in Opp. to Gov.'s Mot. for Recons. of the Court's Orders of Jan. 6, 2020 and June 2, 2020, ECF No. 163 ("Pls.' Resp."). On 21 August 2020, the government filed its reply in support of its motion for reconsideration. *See* Def.'s Reply to Pls.' Resp. to Gov.'s Mot. for Recons. of this Court's Orders of Jan. 6, 2020 and June 2, 2020, and for Related Relief ("Gov. Reply").

On 23 September 2020, the government filed a motion requesting "an enlargement of time [for the government] to file its motion for summary judgment and its response to plaintiffs' motion for class certification" until "seven days beyond the date that the Court rules on the [g]overnment's motion for reconsideration." Def.'s Mot. for an Enlargement of Time to File its Mot. for Summ. Judgment and its Resp. to Pls.' Mot. for Class Cert. and Req. for Expedited Consideration of its Enlargement Req., ECF No. 170 at 1. Plaintiffs filed a response in

opposition to the government's motion on 23 September 2020, and the government filed a reply in support of its motion on 24 September 2020.  *See* Opp. to Def.'s Mot. for Enlargement of Time to File Mot. for Summ. Judgment and Resp. to Class Cert. and for Expedited Consideration, ECF No. 171; Def.'s Sealed Reply to Pls.' Resp. to Def.'s Mot. for an Enlargement of Time to File its Mot. for Summ. Judgment and its Resp. to Pls.' Mot. for Class Cert. and Req. for Expedited Consideration of its Enlargement Req., ECF No. 172.  On 24 September 2020, the Court issued an order staying all deadlines in this case pending resolution of the government's motion for reconsideration.  *See* Order, ECF No. 173 at 2.

The Court held a sealed oral argument on the government's motion for reconsideration on 28 January 2021.  *See* Order, ECF No. 179.  At the close of oral argument, the Court instructed government counsel to produce a list of "communications that were had with Mr. Hutter . . . between January and June of 2020."  Tr. at 108:1–4.  On 8 February 2021, the government filed an unopposed motion for an enlargement of time to produce the call logs requested by the Court.  *See* Def.'s Unopposed Mot. for an Enlargement of Time to Produce Call Logs, ECF No. 182.  The Court granted the government's motion and instructed the government to "produce the information on or before 17 February 2021."  Order, ECF No. 183 (emphasis omitted).  On 18 February 2021, the government filed its "notice of production of call log records" and an out-of-time motion for an enlargement of time to produce the call logs.[9]  *See* Notice of Production of Call Log Records Pursuant to This Court's Oral Order of January 28, 2021, ECF No. 184; Def.'s Out-of-Time Mot. for an Enlargement of Time to Produce Call Logs, ECF No. 185.

## III.  Parties' Arguments

The government argues the Court should reconsider its 6 January 2020 and 6 June 2020 orders for two grounds:  (1) the Court should reconsider its rulings on the ground Mr. Hutter's affidavit constitutes newly discovered evidence; and (2) reconsideration of the Court's 6 January 2020 and 6 June 2020 orders are necessary to correct clear factual or legal error or prevent manifest injustice.  *See* Mot. for Recons. at 18; Tr. at 20:23–21:2 (government counsel agreeing the government is arguing "the second and third [grounds for reconsideration based on Rule 59(a)(1) of the Rules of the United States Court of Federal Claims]:  newly discovered evidence and the need to correct clear factual or legal error or prevent manifest injustice").  In support of its motion for reconsideration on the ground of newly discovered evidence, the government argues it "was diligent in attempting to obtain Mr. Hutter's cooperation" during the period between when plaintiffs filed their initial motion to determine the privilege of Document One and Document Two and when the government's response to the motion was due, and Mr. Hutter's declaration "is replete with new evidence that the Court should consider in granting reconsideration" related to the privilege status of Document One and Document Two.  Gov. Reply at 2, 7.  In support of its motion for reconsideration on the ground of manifest injustice,

---

[9]  The government's out-of-time motion for an enlargement of time to produce call logs requests "a one-hour and 21-minute enlargement of time to file its response to [the] Court's oral order of January 28, 2021."  Def.'s Out-of-Time Mot. for an Enlargement of Time to Produce Call Logs, ECF No. 185 at 1.  The government states plaintiffs "take no position with respect to this motion," and notes the government's attempt to "obtain expanded declarations from the DHA personnel involved in the events . . . was substantially impacted by the fact that three of the four declarants from whom [the government] requested expanded declarations were out of the office."  *Id.* at 1–2.  For good cause shown, the Court grants the government's out-of-time motion for an enlargement of time to produce call logs.

the government claims Mr. Hutter's declaration shows "that this Court has, unfortunately, made a manifest mistake of fact" and "[a]rming plaintiffs with the mental impressions of the agency's General Counsel provides plaintiffs with an unfair advantage to which they are in no way entitled under the Rules of the Court." *Id.* at 15 (internal quotation marks and citations omitted).

In response to the government's motion for reconsideration on the ground of newly discovered evidence, plaintiffs argue Mr. Hutter's declaration is not new evidence "for two reasons":  (1) "the [g]overnment does not explain why it could not have obtained the declaration a year ago, while the parties were engaging in extensive briefing[] and before the Court heard lengthy argument, issued a detailed opinion, and [p]laintiffs acted in reliance on the Court's ruling"; and (2) "the supposed 'facts' in the Hutter Declaration," which plaintiffs argue "are really just self-serving characterizations[,] . . . do not change the Court's analysis."  Pls.' Resp. at 12–13.  On the government's motion for reconsideration on the ground of manifest injustice, plaintiffs argue the government "identifies no error the [C]ourt made that is 'apparent to the point of being almost indisputable' that would justify reconsideration."  Pls.' Resp. at 24. Plaintiffs also argue in the alternative the government waived any claim Document One and Document Two were privileged by consenting to their public filing, and Document One and Document Two are not privileged for the additional reasons plaintiffs provided in its initial briefing on the matter that the Court's 6 January 2020 ruling was not based on.  Pls.' Resp. at 27–35.

## IV.  Applicable Law

Pursuant to Rule 59(a) of the Rules of the United States Court of Federal Claims ("RCFC") a court "may, on motion, grant a new trial or a motion for reconsideration on all or some issues . . . ."  RCFC 59(a)(1).  "As an initial matter, post-opinion motions to vacate or reconsider are not favored.  This is especially true where a party has had a fair opportunity to argue to litigation the point in issue."  *Prestex, Inc. v. United States*, 4 Cl. Ct. 317, 318 (1984) (citing *General Electric Co. v. United States*, 189 Ct. Cl. 116, 117–18 (1969)).  The Federal Circuit has identified "three primary grounds that justify reconsideration," "(1) an intervening change in the controlling law;[10] (2) the availability of new evidence; and (3) the need to correct clear error or prevent manifest injustice."  *Del. Valley Floral Grp., Inc. v. Shaw Rose Nets, LLC.*, 597 F.3d 1374, 1383 (Fed. Cir. 2010) (internal citations and quotation marks omitted).  Motions for reconsideration "must be supported 'by a showing of *extraordinary circumstances* which justify relief.'"  *Caldwell v. United States*, 391 F.3d 1226, 1235 (Fed. Cir. 2004) (quoting *Fru-Con Constr. Corp. v. United States*, 44 Fed. Cl. 298, 300 (1999)) (emphasis added).  Courts must address motions for reconsideration with "exceptional care."  *Carter v. United States*, 207 Ct. Cl. 316, 318 (1975) (internal citation omitted).  In addressing a motion for reconsideration, courts often "make [a] fault/no fault distinction the controlling factor in determining whether extraordinary circumstances will be found or not.  In a vast majority of cases finding that extraordinary circumstances do exist so as to justify relief, the movant is completely without fault . . . ."  *Lucier v. United States*, 138 Fed. Cl. 793, 798 (quoting 12 Joseph T. McLaughlin & Thomas D. Rowe, Jr., *Moore's Federal Practice* § 60.48[3][b] (3rd ed. 2008)).  The decision

---

[10]  The government stated in its briefing and at oral argument the first ground for reconsideration, an intervening change in the controlling law, is not at issue in this case.  *See* Tr. 20:18–22.

whether to grant reconsideration "lies largely within the discretion of the [trial] court." *Yuba Natural Resources, Inc. v. United States*, 904 F.2d 1577, 1583 (Fed. Cir. 1990).

### A. Motion for Reconsideration on the Ground of the Availability of New Evidence

A Court may grant a motion for reconsideration on the ground of "the availability of new evidence" affecting the underlying order. *Del. Valley Floral Grp.*, 597 F.3d at 1383. Evidence put forward by a party as "newly discovered evidence" sufficient to justify a motion for reconsideration must be evidence which "could not have been discovered by the exercise of due diligence prior to the rendition of the initial decision" challenged by the moving party. *Girault v. United States*, 133 Ct. Cl. 135, 140 (1955). If the evidence was "readily available" to the party moving for reconsideration, "it cannot possibly be considered to have been newly discovered evidence." *Id*. When a party moves for reconsideration on the ground of newly discovered evidence, the movant must demonstrate the evidence was "unavailable" to it prior to the court's initial decision, not merely the moving party did not have the evidence in its possession. *See Del. Valley Floral Grp.*, 597 F.3d at 1384. Parties may not, "on a motion for reconsideration, be permitted to attempt an extensive re-trial based on evidence which was manifestly available at time [sic] of the hearing." *Gelco Builders & Burjay Const. Corp. v. United States*, 177 Ct. Cl. 1025, 1037 n.7 (1966). Courts have previously held it "logical and well established that the litigation process rests on the assumption that both parties present their case once, to the best advantage"; therefore "a motion for reconsideration . . . should not be based on evidence that was readily available at the time the motion was heard." *Lucier*, 138 Fed. Cl. 799 (internal citations and quotation marks omitted).

The Federal Circuit in *Delaware Valley Floral Group* affirmed the district court's denial of a motion for reconsideration in which the moving party claimed testimony from a former employee was "newly discovered evidence of the date of invention and the dates of experimentation." *Id*. at 1378, 1384. The Federal Circuit rejected the argument the evidence was newly discovered when the party moving for reconsideration claimed it "was unaware of [the testator's] location prior to the grant of summary judgment," as such "evidence does not demonstrate [the testator] was unavailable; it merely shows that [the moving party] made no effort to locate him prior to summary judgment." *Id*. at 1384. As the moving party "failed to provide evidence to establish that [the testator's] testimony was unavailable prior to summary judgment, the court did not abuse its discretion in denying reconsideration." *Id*.

Other circuit courts have similarly emphasized the distinction of whether evidence provided by the party moving for reconsideration constitutes "newly discovered evidence" rests on the distinction of whether the evidence was "available" to the moving party prior to the underlying court order. In *Oto v. Metropolitan Life Ins. Co*., plaintiff deceased in the midst of a litigation in which the parties disputed the proceeds from a life insurance policy, and the trial court eventually ruled in favor of the decedent's estate. 224 F.3d 601, 603 (7th Cir. 2000). Defendant moved for reconsideration of the district court summary judgment decision, arguing an affidavit from a former employee of plaintiff's that defendant obtained after the summary judgment decision constituted "newly discovered evidence," because the death of plaintiff—the affiant's employer—made it impossible for defendant to learn the identities of plaintiff's employees. *Id*. at 606. The Seventh Circuit rejected defendant's argument, noting defendant

"could have asked [the decedent] for the names of former employees" during a prior deposition or "could have subpoenaed [the decedent's] business records," and, given the "ease with which either of these things could have been done," defendant failed to exercise due diligence necessary for the evidence to be "newly discovered." *Id.*; *see also Mays v. U.S. Postal Service*, 122 F.3d 43, 46 (11th Cir. 1997) ("Other circuits hold that parties cannot introduce new evidence post-judgment unless they show that the evidence was previously unavailable. We join those circuits in holding that where a party attempts to introduce previously unsubmitted evidence on a motion to reconsider, the court should not grant the motion absent some showing that the evidence was not available during the pendency of the motion."); *United States v. Allen*, 573 F.3d 42, 54 (1st Cir. 2009) ("[T]he district court was not obligated to accept [the movant's] argument that [an affiant] was 'unavailable' due to a lack of phone service. Indeed, the district court reasonably inferred that [the party moving for reconsideration on the ground of newly discovered evidence] knew where [the affiant] lived and could get in touch with him if he had wanted to.").

### B. Motion for Reconsideration on the Ground of Need to Correct Clear Error or Prevent Manifest Injustice.

Another ground for a motion for reconsideration is "the need to correct clear error or prevent manifest injustice." *Del. Valley Floral Grp.*, 597 F.3d at 1383. A party may not use a motion for reconsideration "as a vehicle to present authorities available at the time of the first decision or to reiterate arguments previously made." *Id.* at 1384. A motion for reconsideration on the ground of a need to correct clear error or prevent manifest injustice is only appropriate "where the Court has patently misunderstood a party, or has made a decision outside of the adversarial issues presented to the Court by the parties, or has made an error not of reasoning, but of apprehension." *Id.* (internal citations and quotation marks omitted). Where a party seeks reconsideration on the ground of need to correct clear error or manifest injustice, it cannot prevail "unless it demonstrates that any injustice is 'apparent to the point of being almost indisputable.'" *Griffin v. United States*, 96 Fed. Cl. 1, 7 (2010) (quoting *Pac. Gas & Elec. Co. v. United States*, 74 Fed. C. 779, 785 (2006), *rev'd on other grounds*, 536 F.3d 1282 (Fed. Cir. 2008)). A court "will *not* grant a motion for reconsideration if the movant 'merely reasserts . . . arguments previously made . . . all of which were carefully considered by the Court.'" *Ammex, Inc. v. United States*, 52 Fed. Cl. 555, 557 (2002) (quoting *Principal Mut. Life Ins. Co. v. United States*, 29 Fed. Cl. 157, 164 (1993) (emphasis in original); *see also Englewood Terrace Ltd. Partnership v. United States*, 96 Fed. Cl. 614, 619 (2011) (quoting the same language as *Ammex*); *A Squared Joint Venture v. United States*, 146 Fed. Cl. 705, 711 (2020) ("The court considered and rejected [plaintiff's] arguments regarding other sources of substantive law and the decision to use the JSC Contract when it made this holding. [Plaintiff] has therefore failed to demonstrate 'indisputable' error or injustice based solely on the court's statement that [plaintiff] identified only one possible source of substantive law . . . .").

## V. Analysis of Reconsideration on the Grounds of the Availability of New Evidence

"Newly discovered evidence is only such evidence as could not have been discovered by the exercise of due diligence prior to the rendition of the initial decision." *Girault v. United States*, 133 Ct. Cl. 135, 140 (1955). The Federal Circuit has instructed when it comes to certain

types of supplemental affidavits, "as a general rule, . . . motions [for reconsideration] do not
provide a vehicle for the introduction of new evidence or affidavits." *Dixon v. Shinseki*, 741
F.3d 1367, 1378 (Fed. Cir. 2014). The government's motion for reconsideration on the ground
of newly discovered evidence "is based strictly on the June 2020 affidavit signed by Mr. Hutter."
Tr. at 15:11–14 (government counsel agreeing with the Court's characterization of the scope of
new evidence presented). The government characterizes the affidavit as "bear[ing] on the
Court's decision that the threat of litigation was only remote and its analogy of the threats in this
case to the *Binks* case" and "add[ing] . . . that Mr. Brodek consistently, emphatically indicated to
him that should [the government] not come to an agreement with respect to the hospitals he
claimed to represent . . . he would be forced to sue TRICARE for alleged underpayments." Tr. at
15:21–16:3, 16:9–14. Plaintiffs dispute this characterization, arguing the information in Mr.
Hutter's declaration is "not new" because "everything in the declaration was presented in
argument by the government. It wasn't in the form of Mr. Hutter's declaration, but the sum and
substance is in the emails that the government submitted. It's in the argument that they made."
*Id.* at 13:2–7.

     As the government conceded at oral argument, "it was originally the government's
burden to establish Documents 1 and 2 constituted attorney work product." Tr. at 21:4–7. The
Court does not address at this time whether the evidence contained in Mr. Hutter's affidavit, if
properly presented to the Court before 6 January 2020, would have affected the Court's original
ruling on plaintiffs' 24 June 2019 motion. The question before the Court, rather, is whether the
government's motion for reconsideration meets the burden of proving "extraordinary
circumstances which justify relief." *Caldwell v. United States*, 391 F.3d 1226, 1235 (Fed. Cir.
2004) (internal quotation marks and citation omitted); *see also* Tr. 20:12–17 (government
counsel agreeing "the [g]overnment must meet [the burden of a] showing of extraordinary
circumstances to justify relief").

     For evidence provided for the first time at the motion for reconsideration stage to
constitute "newly discovered evidence," the Federal Circuit has required the movant establish the
evidence at issue "was *unavailable* prior to" the decision underlying the motion for
reconsideration. *Del. Valley Floral Grp., Inc. v. Shaw Rose Nets, LLC*, 597 F.3d 1374, 1384
(Fed. Cir. 2010) (emphasis added); *see also Giora George Angres, Ltd. v. Tinny Beauty and
Figure, Inc*., No. 96-1507, 1997 WL 355479, at *8 (Fed. Cir. June 26, 1997); Tr. at 22:22–23:2
(government counsel agreeing "the standard for determining whether evidence is newly
discovered for the purposes of a motion for reconsideration relies on [an] analysis of whether the
evidence was unavailable" when the Court made the original ruling).

     In *Delaware Valley Floral Group*, the "newly discovered evidence" that defendant
sought to introduce through a motion for reconsideration was declarations from deceased
plaintiff's former employee which, according to defendant, "create[d] a genuine issue of material
fact with regard to when the patented process was ready for patenting." *Del. Valley Floral Grp.*,
597 F.3d at 1383. The district court denied the motion for reconsideration, "finding that the two
declarations were not newly discovered because the testimony was not unavailable prior to the
grant of summary judgment." *Id*. at 1378. On appeal, defendant argued "the district court
abused its discretion because the record indicates that [defendant] was unaware of [the
employee's] location prior to the grant of summary judgment, and that [defendant] was only able

to locate [the employee] by happenstance." *Id.* at 1384. The Federal Circuit rejected this argument, noting the evidence "does not demonstrate that [the employee] was unavailable; it merely shows that [defendant] made no effort to locate him prior to summary judgment." *Id.*

The Federal Circuit in *Pieczenik* similarly affirmed the denial of a motion for reconsideration on the ground of newly discovered evidence when the movant provided an affidavit for the first time at the motion for reconsideration. *Pieczenik v. Dyax Corp.*, 120 Fed. Appx. 310, 310–11 (Fed. Cir. 2004). In *Pieczenik*, plaintiff asserted that evidence included for the first time with a motion for reconsideration of an adverse ruling "established the falsity" of an affidavit submitted by the defendant, and plaintiff claimed he obtained the material only due to a separate "litigation pending in the Southern District of New York." *Id.* at 310. The evidence in question was a sales record from a third party which allegedly showed an affidavit submitted by the defendant contained falsehoods. *Id.* at 311. In rejecting the argument the information contained in the affidavit constituted "newly discovered evidence," the Federal Circuit noted plaintiff "never sought additional discovery" and, because the plaintiff "did seek and obtain discovery . . . in the Southern District of New York litigation pursuant to a subpoena[,] [t]here is no reason to think that [plaintiff] was barred from a similar course in this case." *Id.*

Other circuit courts have similarly upheld the denial of a motion for reconsideration when newly discovered evidence was "available" at the time the trial Court issued the underlying order. *See, e.g., Oto v. Metropolitan Life Ins. Co.*, 224 F.3d 601, 606 (7th Cir. 2000) (affirming the rejection of a motion for reconsideration when a movant argued a witness was only discovered by "sheer coincidence" after discovery closed, despite the death of the opposing party, because the movant "could have asked [the deceased party] for the names of former employees during [the deceased party's] deposition or he could have subpoenaed [the deceased party's] business records"); *United States v. Allen*, 573 F.3d 42, 54 (1st Cir. 2009) ("[T]he district court was not obligated to accept [defendant's] argument that [the third party affiant of the newly provided affidavit] was 'unavailable' due to a lack of phone service. Indeed, the district court reasonably inferred that [defendant] knew where [the affiant] lived and could get in touch with him if he had wanted to."); *Mays v. U.S. Postal Service*, 122 F.3d 43, 46 (11th Cir. 1997) ("We join [other federal] circuits in holding that where a party attempts to introduce previously unsubmitted evidence on a motion to reconsider, the court should not grant the motion absent some showing that the evidence was not available during the pendency of the motion.").

The government argues Mr. Hutter's affidavit constitutes new evidence because the knowledge contained therein "was uniquely in the possession of an individual who is not within the [g]overnment's control and whose cooperation [it] could not compel, particularly during the 14 days to respond to [p]laintiffs' filing." Tr. at 8:7–15. When asked why the information contained in Mr. Hutter's affidavit was "unavailable" on or before the time of the Court's 6 January 2020 ruling, the government stated "it's a combination of things," including "[t]he ordinary tools of discovery and the time frame . . . given the deadlines" for the government's response. Tr. at 23:3–12. In support of the argument the government was diligent in attempting to contact Mr. Hutter in 2019, government counsel states she "attempted to contact Mr. Hutter at his business phone number on the expectation that he would be physically in the office" with two

phone calls and "[s]eparately, agency counsel reached out to Mr. Hutter." Tr. at 49:5–24; *see also id*. at 65:9–11 (government counsel stating the record reflects "two phone calls and a written communication to [Mr. Hutter] via email" as the sum of the government's attempts to contact Mr. Hutter).

Government counsel acknowledged, at least as early as 2019, "the [g]overnment believe[d] Mr. Hutter had information that could support its position on the question of whether Documents 1 and 2 were attorney work product." Tr. at 40:17–22. The government states it did not "consider seeking a subpoena of Mr. Hutter when he did not return the phone call prior" to oral argument on plaintiffs' 24 June 2019 motion, because seeking a deposition would "take[] time" and require "special permission within the Department of Justice." Tr. at 38:4–14. The government did not, however, "make any attempts at delay for the response filing or seek[] to reopen fact discovery and communications with opposing counsel or anything else in order to allow means for time for contacting Mr. Hutter."[11] Tr. at 42:23–24:3. The government further confirmed at oral argument it had Mr. Hutter's home address at least as early as 2019, but did not send him a letter requesting his cooperation. Tr. at 52:14–19. The government argues, however, "the situation was materially different [when the government requested Mr. Hutter's assistance] in 2020" from the government's 2019 request for assistance, because the government's letter includes a line stating it was "considering a deposition . . . to elicit [Mr. Hutter's] testimony in this regard." Tr. at 54:6–10. Government counsel admits, however, she "can't speculate as to what Mr. Hutter's motivations were" and doesn't know whether Mr. Hutter would "have provided a declaration in 2019 . . . without . . . the prospect of a deposition being raised." Tr. at 55:10–23.

At oral argument, the government stated its counsel would not "draw a distinction between [the government counsel who sought to contact Mr. Hutter] and agency counsel" for the purpose of determining diligence, as the Department of Justice ("DOJ") is "government counsel representing the party, so it means everybody." Tr. at 51:13–52:5. According to the government, this means "agency counsel was working [with DOJ counsel] one and the same." Tr. at 52:6–11. As evidenced by emails submitted in the government's appendix to its motion for reconsideration, Mr. Hutter was in email communication with Deputy General Counsel for the DHA Bryan Wheeler at least as late as 3 July 2019. *See* Appx. at 381. The 3 July 2019 email, under the subject line "*Ingham* Litigation -- Need assistance identifying the author of these documents," was originally authored by DOJ counsel on 2 July 2019 before being forwarded to Mr. Hutter by DHA counsel. Appx. at 381–83. Mr. Hutter responded to Mr. Wheeler's email within an hour, and, from the face of the email, Mr. Hutter looked into his own

---

[11] Plaintiffs argue in its response to the government's motion for reconsideration and at oral argument the government's timing of the motion for reconsideration was prejudicial to plaintiffs, stating "we've waited a year to get this [motion for reconsideration] after the parties spent a lot of time and money on briefing, hours of oral argument . . . [and] [t]he Court clearly spent a significant amount of time preparing a detailed opinion." Tr. at 12:6–10. Plaintiffs state, since the Court's 6 January 2020 opinion, they "developed a discovery plan . . . retained a new expert, . . . did an expert report . . . closed discovery again . . . [and] rebriefed class certification." *Id*. at 12:9–15. When asked whether "there [was] any reason to think that at the time in 2019 there would not have been agreement to [an] extension of time, or . . . [whether] there [was] discussion amongst the parties about [an] extension of time," government counsel states she "[didn't] recall what discussions we had about extensions of time in that time frame." *Id*. at 39:19–24.

records and recommended people who may have more knowledge.[12]  Appx. at 381.  Mr. Hutter admitted in his affidavit he "had *several conversations* about the *Ingham* litigation" with DHA Deputy General Counsel Bryan Wheeler and "briefly discuss[ed] the privilege challenge" related to Document One and Document Two in the summer of 2019.  Appx. at 12–13 (emphasis added).  The government conceded at oral argument Mr. Hutter was speaking with a government attorney in 2019 on the issue of privilege in this particular case but sought to distinguish the communication arguing the discussions occurred "before our brief was due, not afterwards."  Tr. at 53:1–16.  Plaintiffs filed their original motion for a privilege determination on 24 June 2019, and the government did not file its response to plaintiffs' motion until 8 July 2019.  *See* Pls.' Mot. for Determination that Certain Documents Produced in Discovery are not Privileged or Subject to the Work Product Doctrine, ECF No. 106; Def.'s Resp. to Pls.' Mot. for Determination that Certain Documents Produced in Discovery are not Privileged or Subject to the Work Product Doctrine, ECF No. 108.  As agency counsel was working with DOJ counsel "one and the same," emails from July 2019 and Mr. Hutter's affidavit show the government was in active email communication with Mr. Hutter about plaintiff's specific privilege challenge in this case during the time the government was drafting its response to plaintiffs' motion.

On 14 May 2020, the government mailed a letter to Mr. Hutter's home requesting his "voluntary assistance in ascertaining the provenance and use of" Document One and Document Two and stating government counsel must "decide within the next week or so" whether to "seek authorization within the Department of Justice to issue a subpoena" for Mr. Hutter's deposition. Appx. at 144.  On 18 May 2020, within four days of the government sending Mr. Hutter a letter via FedEx requesting his assistance on the motion for reconsideration, Mr. Hutter responded by leaving separate voicemails on government counsel's desk phone and cell phone.  Gov. Supp. Production at 4.  Mr. Hutter separately emailed DHA Deputy General Counsel Jennifer Hesch the next day, and on 22 May 2020—within 8 days of the government mailing the letter—Mr. Hutter was on a conference call with DHA General Counsel, DHA Deputy General Counsel, and DHA Associate General Counsel.  *Id.* at 4–5.  This conference call was separate from Mr. Hutter's independent conversations with government counsel, which also happened on 22 May 2020.  *Id.* at 5.  Between January 2020 and May 2020, Mr. Hutter also sent at least one unprompted email to the DHA Associate General Counsel, discussing sports and their personal lives.  *See* Gov. Supp. Production at 63.  While Mr. Hutter was working with the government to draft his affidavit, Mr. Hutter contacted DHA Deputy General Counsel Ms. Hesch "as an independent consultant for Booz Allen" requesting a contracting officer's communication ban be "relaxed" on a TRICARE quality monitoring contract.  *Id.* at 73–74.

---

[12] Plaintiffs additionally argue Mr. Hutter's affidavit does not constitute new evidence because it does not "provide[] additional support for the [g]overnment's arguments related to the January 2020 order."  Tr. at 18:25–19:4.  Rather, plaintiffs assert, the affidavit "is just Mr. Hutter saying . . . his personal observations, adding adverbs here and there" and the affidavit is "inconsistent with . . . what Mr. Hutter wrote in July of 2019 . . . that he didn't have anything else to offer to those emails, he didn't remember anything else."  *Id.* at 19:9–15; *see also id.* at 19:16–21 (plaintiffs arguing "there's a memory of all these adverbs that got added into his declaration a year later, but . . . those adverbs don't actually change the substance of what [Mr. Hutter] says.  So [plaintiffs] would say there is no new evidence in that declaration").  As the Court concludes the affidavit does not constitute new evidence sufficient to warrant a motion for reconsideration, it need not consider the contents of the affidavit and whether the affidavit is inconsistent with Mr. Hutter's previous representations.  *Infra.*

Mr. Hutter was in direct email communication with agency counsel about this case during the summer of 2019 and in fact responded to an email forwarded to him by agency counsel requesting "assistance identifying the author of" Document One and Document Two.  *See* Appx. at 12–13, 381–383.  Further, Mr. Hutter's pattern of behavior between January 2020 and June 2020, including sending personal emails to agency counsel discussing friendly news, setting up conference calls with several DHA counsel within eight days of the government sending him a letter (likely within an even shorter amount of time from when he actually received the letter), and reaching out to agency counsel as an "independent consultant" for Booz Allen seeking "to impress [TRICARE] program officials with its solution," all suggests Mr. Hutter was in close contact with the government, and any new information contained in his affidavit would not have been "unavailable" to the government in 2019 should the government have attempted to diligently obtain the information.  Even Mr. Hutter's pattern of communication with DOJ counsel alone, including his prompt response to government counsel's initial letter[13] and his apparent willingness to assist government counsel after contact was made,[14] suggests Mr. Hutter and his affidavit would not have been unavailable to the government in 2019.

Mr. Hutter's frequent communications with agency counsel, both before and after the Court's 14 January 2020 order, suggest he was significantly *more available* than those affiants in other instances where the Federal Circuit or another circuit court found evidence was not "unavailable" to the party moving for reconsideration on the ground of newly discovered evidence.  *See, e.g., Del. Valley Floral Grp.*, 597 F.3d at 1384 (an affidavit was not newly discovered evidence when the party moving for reconsideration was "unaware" of the affiant's location prior to the challenged ruling, because the affiant was not "unavailable"); *Pieczenik*, 120 Fed. Appx. at 311 (evidence was not "newly discovered" when the party moving for reconsideration could have obtained the evidence pursuant to a subpoena); *Oto*, 224 F.3d at 606 (evidence obtained from a deceased party's employees was not "newly discovered" under the motion for reconsideration standard despite the movant claiming the party's death made it "impossible" to learn of the employee's identity, because the movant could have asked the deceased party for the names of former employees during a deposition prior to the party's death or could have subpoenaed the deceased party's business records); *Allen*, 573 F.3d 54 (an affiant was not "unavailable" due to a lack of phone service because the defendant knew where the affiant lived).

The government cites the Eighth Circuit's *Alpern* decision in its reply to support the argument Mr. Hutter's declaration is newly discovered evidence because the government

---

[13]  The government's letter to Mr. Hutter requesting his assistance for the motion for reconsideration is dated 14 May 2020, and Mr. Hutter left two voicemails for government counsel on 18 May 2020.  Appx. at 143; Gov. Supp. Production at 1.  The timing of his phone calls, as well as the fact he left multiple messages for government counsel on the same day, suggests he attempted to contact government counsel either immediately upon receiving the message or very soon after.

[14]  On 2 June 2020, the government sent an email to Mr. Hutter providing him with "background materials" and "questions that Mr. Seaman and [government counsel] [had] concerning Documents One and Two."  Appx. at 358.  Mr. Hutter responded to government counsel's 2 June 2020 email in less than an hour and, five days later, sent a follow up email apologizing for the delay and promising to respond to the questions "by the end of the day/evening."  Appx. at 357.  Mr. Hutter provided answers to government counsel's questions the next day, stating he gave his "best shot at answering the indicated questions."  Id. at 359.  Later emails between Mr. Hutter and government counsel show Mr. Hutter expressing "hope [his declaration] helps" the government's motion for reconsideration.  Appx. at 385.

exercised an "appropriate level of diligence."  Gov. Reply at 3 (citing *Alpern v. UtiliCorp United, Inc*., 84 F.3d 1525, 1536–37 (8th Cir. 1996)).  *Alpern* is factually distinguishable from the present case:  The "new evidence" warranting reconsideration in *Alpern* was a set of documents controlled by the opposing party, which was disclosed to the movant in a way that "impeded appellants' ability to process and present the information prior to the court's ruling." *Alpern*, 84 F.3d at 1536.  Mr. Hutter was a former government employee who maintained contact with agency counsel, and there is no evidence that plaintiffs controlled or restricted his access in any way.  At oral argument, the government stated it "was not making an argument that *Alpern* was factually on all fours" but rather a party's diligence in obtaining the information is a relevant "inquiry in the context of a motion for reconsideration."  Tr. at 75:13–24.  The government cannot identify any instance of the Court of Federal Claims granting a motion for reconsideration on the ground of newly discovered evidence or the Federal Circuit overturning a denial of a motion for reconsideration on the ground of newly discovered evidence.[15]  *See* Tr. at 76:11–77:3 (government counsel stating she does not have any examples of the Court of Federal Claims granting a motion for reconsideration on the ground of newly discovered evidence).

Mr. Hutter's repeated communications with government employees, both before and after the Court issued its 14 January 2020 order, reveal his testimony was not "unavailable" to the government prior to the Court's 14 January 2020 decision should the government attempt to obtain it.  Based on the record, the Court concludes Mr. Hutter's testimony was not sufficiently "unavailable" to the government for the testimony to be considered "newly discovered evidence" warranting a motion for reconsideration.  *Del. Valley Floral Grp.*, 597 F.3d at 1384.

## VI.    Analysis of Reconsideration on the Ground of Need to Correct Clear Error or Prevent Manifest Injustice

### A.  Whether the Court May Consider Mr. Hutter's Affidavit in Determining Whether There is Need to Correct Clear Error or Prevent Manifest Injustice

The government argues the Court should consider Mr. Hutter's affidavit in deciding the government's motion for reconsideration to prevent manifest injustice.  *See* Gov. Reply at 15 (government arguing it "[has] demonstrated through Mr. Hutter's previously unavailable declaration, that this Court has, unfortunately, made a 'manifest mistake of fact'"); Tr. at 26:25– 27:3 (government counsel disagreeing with the position "that newly discovered evidence can never bear on the question of manifest injustice").  Plaintiffs argue "the law is very clear" that "[m]anifest injustice is a separate grounds from newly available evidence," and therefore the Court should not consider "new[ly] available evidence" as weighing on whether the Court should grant reconsideration on the ground of manifest injustice.  Tr. at 30:24–31:9.

---

[15] During oral argument, the Court asked counsel for the government if the government "ha[s] any examples of cases where the court granted a motion for reconsideration on the ground of newly discovered evidence or Federal Circuit cases that support granting a motion for reconsideration that best suit this situation."  Tr. at 76:11–17.  Counsel for the government admitted the government "wasn't able to find anything that was all fours with this [case]."  *Id.* When asked what case "is most helpful . . . to the government" for its motion for reconsideration on the ground of newly discovered evidence, the government simply stated, "that any case that cites the standard is the most helpful case for the [g]overnment."  Tr. at 77:5–9

As noted *supra*, the Federal Circuit has stated a motion for reconsideration may be granted on the ground of newly available evidence which "was unavailable prior to" the decision underlying the motion for reconsideration. *Del. Valley Floral Grp., Inc. v. Shaw Rose Nets, LLC*, 597 F.3d 1374, 1384 (Fed. Cir. 2010). As the Federal Circuit in *Delaware Valley Floral Group* noted, "[a] motion for reconsideration should not be used as a vehicle to present authorities available at the time of the first decision or to reiterate arguments previously made . . . [but rather] . . . is appropriate where the Court has patently misunderstood a party, or has made a decision outside of the adversarial issues presented to the Court by the parties, or has made an error not of reasoning, but of apprehension." *Id*. (internal citations and quotation marks omitted) (rejecting plaintiff's "half-hearted argument that manifest injustice requires consideration [because] . . . this new evidence creates a genuine issue of that precludes summary judgment"). If evidence failing the Federal Circuit's "newly discovered evidence" standard could still be the basis for a motion for reconsideration on a separate ground, it would render the "newly discovered evidence" standard nearly meaningless and correspondingly open the door for parties to submit much more evidence at the reconsideration stage than allowed under the *Delaware Valley Floral Group* standard. *See, e.g. Englewood Terrace Ltd. Partnership v. United States*, 96 Fed. Cl. 614, 619 (2011) ("[A] party will not prevail on a motion for reconsideration by raising an issue for the first time on reconsideration when the issue was available to be litigated at the time the complaint was filed.") (internal citations and quotation marks omitted). The government was unable to provide, and this Court is not aware of, any examples of a court finding evidence provided for the first time at the reconsideration stage that failed the "newly discovered evidence" ground for reconsideration could form the basis of a motion for reconsideration on the ground of manifest injustice. Tr. at 27:9–12 (government counsel stating she "did not research [the] issue" of whether "there [is] a case that supports newly discovered evidence bearing on manifest injustice").

Applying *Delaware Valley Floral Group*, the Court concluded Mr. Hutter's affidavit was not sufficiently "unavailable" to the government prior to the Court's 14 January 2020 decision for the affidavit to be considered "newly discovered evidence" warranting a motion for reconsideration. *See supra* Section V. Given the failure of the affidavit to be considered newly discovered evidence, had the Court considered Mr. Hutter's new affidavit when deciding whether reconsideration is warranted on the ground of preventing manifest injustice, it would allow the government to circumvent the high standard for introducing new evidence at the motion for reconsideration stage, when only evidence which "could not have been discovered by the exercise of due diligence prior to the rendition of the initial decision" can be introduced. *Girault v. United States*, 133 Ct. Cl. 135, 140 (1955). The Court therefore concludes Mr. Hutter's affidavit, provided for the first time at the motion for reconsideration stage, cannot form the basis of a motion for reconsideration on the ground of manifest injustice. *Yuba Natural Resources, Inc. v. United States*, 904 F.2d 1577, 1583 (Fed. Cir. 1990) (finding the decision whether to grant reconsideration "lies largely within the discretion of the [trial] court").

## B. The Government's Motion for Reconsideration on the Ground of Need to Correct Clear Error or Prevent Manifest Injustice

The government argues reconsideration on the ground of manifest injustice is necessary because "[t]his Court's orders of January 6, 2020 and June 2, 2020 empower the plaintiffs to

conscript the mental impressions and litigation liability projections of DHA's own general counsel . . . in a lawsuit in which they ultimately intend to seek billions of dollars in damages." Mot. for Recons. at 34. The government claims "[t]his [is the] misuse of attorney work product" and [t]here is no legitimate reason for plaintiffs to invade the privilege in this case." *Id.* at 34–35; *see also* Gov. Reply at 16 ("[T]he manifest injustice in this case is borne only by the [g]overnment, and the Court should grant the reconsideration . . . ."). At oral argument, the government argued it "believe[s] the Court's decision represents a misapprehension of the plain terms of the documents that were presented . . . [which is] the same thing as when a court gets a statute or regulation wrong based on [the] cold administrative record." Tr. at 34:7–15. The government, however, was unable to provide any example of "a case that describes a court granting reconsideration for manifest injustice that's applicable here." *Id.* at 32:17–21.

In response, plaintiffs argue the government's motion for reconsideration "essentially [raises] the same argument" as the underlying privilege motion, where "the [g]overnment contends that the Court erred by concluding that Document One and Document Two were created as part of a business settlement, and not just in contemplation of the threat of litigation." Pls.' Resp. at 24. Plaintiffs further contend reconsideration on the ground of manifest injustice is not appropriate because "[t]he [g]overnment's claim that the Court's order subjects it to 'manifest injustice' is based on the unsurprising fact that the Court . . . concluded that Document One and Document Two are not privileged, [and] [p]laintiffs have used those documents to support their case." *Id.* at 27.

A party seeking reconsideration on the ground of manifest injustice "cannot prevail unless it demonstrates that any injustice is apparent to the point of being almost indisputable." *Lucier v. United States*, 138 Fed. Cl. 793, 799 (2018) (internal citations and quotation marks omitted); *see also* Tr. at 24:25–25:4 (government counsel agreeing "a party seeking reconsideration cannot prevail unless it demonstrates that any injustice is apparent to the point of being almost indisputable"). A motion for reconsideration on this ground is appropriate "where the Court has patently misunderstood a party, or has made a decision outside of the adversarial issues presented to the Court by the parties, or has made an error not of reasoning, but of apprehension." *Del. Valley Floral Grp.,* 597 F.3d at 1384 (internal quotation marks omitted). "Such problems rarely arise and the motion to reconsider should be equally rare." *Id.*

The government raises the same arguments in support of its motion for reconsideration as it did in the underlying privilege dispute, specifically that: "[t]he Court discounted the significance of emails in which Mr. Brodek expressly threatened litigation against the agency"; "Duane Morris did not make a routine Step 8 challenge within the framework of the discretionary payment process"; "[Document One] self-identifies its non-routine use, and the fact that it is work product"; "Document One was not a 'dual purpose' document"; and "Document Two was prepared in anticipation of litigation, rather than in the ordinary course of business, and . . . reflects opinion work product." Mot. for Recons. at 19, 21, 23, 33–34 (emphasis omitted). In the 14 January 2020 Opinion and Order, the Court carefully considered and rejected the same arguments[16] presented by the government on the privilege status of Document One and

---

[16] *See* 14 January Order at 19–20 ("[T]he 2011 emails discuss the benefits of agreeing on calculation figures to avoid disputes[,] . . . demonstrate the authors hoped litigation could be avoided[,] and refer to the term 'settlement' as a negotiated business settlement to bring finality to payment adjustments."); *id.* at 18 ("TRICARE's invitation for

Document Two.[17]  *See* 14 January 2020 Order at 17–23.  A motion for reconsideration "should not be used as a vehicle to . . . reiterate arguments previously made."  *Del. Valley Floral Grp.*, 597 F.3d at 1384.  The government has not shown any example of the Court "misunderstanding a party," "ma[king] a decision outside of the adversarial issues presented to the Court by the parties," or "ma[king] an error not of reasoning, but of apprehension."  *Id*.  Rather, government counsel at oral argument noted she is "not implying that the Court's decision was not well considered" but rather "appreciate[s] the amount of effort the Court put into it, and . . . do[es] consider it to be well considered."  Tr. at 32:24–33:7.

The government has not provided evidence the Court's 6 January 2020 Order contained an "injustice . . . apparent to the point of being almost indisputable."  *Lucier*, 138 Fed. Cl. at 799.  Absent such a showing, Courts must reject motions for reconsideration on the ground of manifest injustice seeking to raise the same arguments previously made and ruled on by the Court.  *Del. Valley Floral Grp.*, 597 F.3d at 1384; *see also A Squared Joint Venture v. United States*, 146 Fed. Cl. 705, 711 ("Although it did not specifically identify [the] three arguments, the court's holding fully addressed and rejected all of [the] arguments regarding the [contract]. Reconsideration based on these arguments is therefore denied.").  The Court therefore concludes the government fails to demonstrate "the need to correct clear error or prevent manifest injustice" necessary to warrant reconsideration.  *Del. Valley Floral Grp.*, 597 F.3d at 1383.

## VII.  Conclusion

Mr. Hutter's affidavit does not constitute "newly discovered evidence" for the purpose of a motion for reconsideration, and the Court's 6 January 2020 and 2 June 2020 orders do not warrant reconsideration on the ground of "manifest injustice."  Accordingly, the Court **DENIES** the government's motion for reconsideration.  As addressed *supra* in footnote 9, the Court **GRANTS** the government's motion for an enlargement of time to produce the call logs, ECF No. 185.  The parties **SHALL FILE** a joint status report on or before 4 August 2021 proposing a joint class certification and summary judgment briefing schedule, or the parties' respective positions on a class certification and summary judgment briefing schedule.  The joint status report shall also contain proposed dates for a status conference to discuss the class certification and summary judgment briefing schedule and the government's motion for leave to exceed the page limits for its summary judgment and response to plaintiffs' motion for class certification.

**IT IS SO ORDERED.**

---

participant hospitals to submit claims for review is comparable to business decisions insurance companies make during internal claims evaluation processes."); *id*. ("Although the government argues Document One's privilege is apparent on its face, '[t]he court's responsibility is to look at the essence of the document itself, and not . . . a stamp affixed to the document.'"); *id*. at 22 ("Although Document One may have served a dual-purpose to provide evidence of miscalculations, [it] would have been produced regardless of any litigation to ensure the correct payment was made . . . ."); *id*. at 23 ("Although Document Two's title contains the word 'settlement,' the calculations in the document refer to a negotiated business recalculation settlement, not the settlement of a legal action, as the comments were related to repayment review.").

[17] As noted *supra*, Mr. Hutter's affidavit fails to meet the "newly discovered evidence" standard and the Court will therefore not consider it in determining whether reconsideration is necessary on the ground of manifest injustice. *See supra* Section VI.A.

<u>s/ Ryan T. Holte</u>
RYAN T. HOLTE
Judge